**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mach 1 Air Services Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>Mark Bustillos and Veronica Bustillos, husband and wife; Jose Cardiel and Sandra Cardiel, husband and wife; Aries Freight Systems LP,<br><br>Defendants. | No. CV-12-02617-PHX-GMS<br><br>**ORDER** |

Defendant Aries Freight Systems LP has filed a Motion to Dismiss or Transfer Venue. (Doc. 42.) The Court heard argument on the matter on March 22, 2013, and now grants Aries Freight's Motion to Transfer Venue. The entire case shall be transferred to the Western District of Texas, El Paso Division.

## BACKGROUND[1]

Plaintiff Mach 1 Air is an Arizona corporation that is in the business of domestic and international freight forwarding. (Doc. 31 ¶¶ 1, 9.) It has a corps of customer service representatives at its many facilities throughout the country. (*Id.* ¶¶ 11, 13-14.) Mach 1 invests substantial resources in training its employees and developing its customer base.

---

[1] These facts are taken from Mach 1's Complaint and from the affidavits and exhibits attached to the pleadings filed in connection with Aries Freight's Motion to Dismiss. The Court has accepted allegations in Mach 1's Complaint as true to the extent they are uncontroverted by Aries Freight's affidavit and exhibits. Where conflicts exist between the facts contained in the Parties' affidavits, depositions, and other discovery materials, those conflicts have been resolved in Mach 1's favor. *See Rio Props. Inc. v. Rio Int'l. Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

(*Id.* ¶¶ 15-16.) One of its key facilities is located in El Paso, Texas, less than five miles from the Mexican border. (*Id.* ¶ 14.) El Paso is a critical area for Mach 1 because of its proximity to Cuidad Juarez, Mexico, and the hundreds of plants located there. (*Id.*) El Paso functions as a gateway for cross-border trade between the United States and Mexico. (*Id.*)

Defendant Mark Bustillos joined Mach 1 in February 2003. (*Id.* ¶ 22.) Bustillos signed an employment agreement with Mach 1 that contained provisions restricting Bustillos's ability to disclose Mach 1's confidential information, solicit Mach 1 customers and employees after leaving employment, and obtain employment with a competitor. (*Id.* ¶¶ 31-32; Doc. 31-1, Ex. A.) He served as the Regional Sales Manager over the El Paso area and was responsible for developing and maintaining customers. (Doc. 31 ¶ 22.) Mach 1 covered certain expenses to enable Bustillos to build up a client base. (*Id.* ¶¶ 24-26.) Bustillos had success in establishing new customer relationships and strengthening existing ones. (*Id.* ¶ 28.) In his role as Regional Sales Manager, Bustillos had access to all of Mach 1's sales information and strategies. (*Id.* ¶ 29.)

Unbeknownst to Mach 1, Bustillos had been in contact with Aries Freight Executive Vice President (and former Mach 1 employee) George Ochoa since at least September of 2011. (Doc. 48-1, Exs. 1-5.) Aries Freight is a Texas company that operates primarily in Texas, but has facilities in other states. (Doc. 42-1, Ex. 1.) Ochoa and Bustillos planned to have Bustillos use his relationships with customers to jump-start a new Aries Freight facility in El Paso. (Doc. 48-1, Exs. 1-5.) They discussed transitioning Bustillos's current customers over to Aries Freight to establish a strong base of initial customers. (*Id.*) In addition, Bustillos provided Ochoa with various data projections, including sales and profit projections that appear to be based on Mach 1 customer data. (*Id.*) Bustillos had been emailing himself confidential customer information from his Mach 1 email account to his private email account. (Doc. 31 ¶¶ 49-50, 55.)

Bustillos officially applied to Aries Freight on September 5, 2012, resigned from Mach 1 on September 10, and began working for Aries Freight as its El Paso District

Manager within a few days. (*Id.* ¶¶ 57-58.) Almost immediately, Bustillos began soliciting many Mach 1 customers to transfer their accounts to Aries Freight. (*Id.* ¶ 60.)

Defendant Sandra Cardiel was also a Mach 1 employee. (*Id.* ¶ 67.) She joined the Domestic Operations department of the El Paso facility in January of 2001. (*Id.*) In September 2012, Cardiel began corresponding with Bustillos about joining him at Aries and using her inside knowledge of Mach 1 pricing to enable Aries Freight to undercut Mach 1. (*Id.* ¶ 70.) She tendered her resignation on September 17, 2010, and that very day emailed confidential pricing information about Mach 1 vendors US Airways, DHL, and Heavyweight Air Express from her work account to her personal account. (*Id.* ¶ 71.) She soon joined Aries Freight. (*Id.*)

After sending cease and desist letters to no avail, Mach 1 filed suit on December 7, 2012. (Doc. 1.) On December 14, 2012, this Court held a hearing and entered a Temporary Restraining Order that restrained Bustillos and Cardiel from soliciting Mach 1 customers directly or indirectly within a 150 mile radius from the El Paso facility, encouraging any person or entity to not do business with Mach 1, and inducing Mach 1 employees to leave. (Doc. 21.) Mach 1 amended its Complaint to add Aries Freight as a Defendant on January 8, 2013. (Doc. 31.) The Parties then stipulated to reschedule the Preliminary Injunction hearing for March 22, 2013. (Doc. 50.) In the meantime, Aries Freight filed the instant Motion to Dismiss or Transfer and asserts lack of subject matter jurisdiction, personal jurisdiction, service, and proper venue. (Doc. 42.) Mach 1 has also filed a Motion for Order to Show Cause, in which it claims that Bustillos and Cardiel are violating the TRO. (Doc. 55.) That Motion is addressed in a separate order. The Court held a hearing on these matters on March 22, 2013. Nevertheless, because it determined that transfer is warranted, it vacated the preliminary injunction hearing.

## DISCUSSION

### I. SUBJECT MATTER JURISDICTION

In its Motion, Aries Freight claims that subject matter jurisdiction is lacking in this diversity action. 28 U.S.C. § 1332(a) sets forth the jurisdictional requirements in a

diversity action: (1) complete diversity between the parties and (2) an amount in controversy greater than $75,000. Aries Freight contends that Mach 1's Complaint fails to satisfy the amount in controversy requirement. Mach 1 has the burden of demonstrating that "it is 'more likely than not' that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

Aries Freight claims that total sales from August 5, 2012, to January 3, 2013, to customers that Mach 1 identified in a subpoena generated less than $10,000 in revenue. (Doc. 42 at 13; Doc. 42-1, Exs. A, B, C.) Aries Freight claims that revenues were realized from only two former Mach 1 customers. Mach 1, however, has submitted additional evidence that its losses have exceeded $75,000. Jaime Fletcher, Mach 1's CEO, submitted an affidavit in which she recounts that the loss of just one Mach 1 customer to Aries has cost Mach 1 hundreds of thousands of dollars. (Doc. 48-9, Ex. 9 ¶ 2.) In addition, Mach 1 claims as damages money spent on Bustillos's business expenditures during the last year of his employment at Mach 1, when Mach 1 claims he was really working to develop Aries Freight's business.

Mach 1 has established by a preponderance of the evidence that it has suffered substantial losses and will likely suffer future losses that exceed $75,000. The snapshot provided by Aries Freight is too limited to encapsulate all of Mach 1's present and future damages if it succeeds on its claim. Indeed, Aries Freight did not contest Mach 1's evidence in its Reply. Mach 1 has established that this Court has subject matter jurisdiction over its suit.

## II. SERVICE OF ARIES FREIGHT

Aries Freight also moves to dismiss pursuant to Rule 12(b)(4) & (5), claiming that Mach 1 failed to properly effect service of process. While the Ninth Circuit has allowed some give in the joints of Rule 4's service requirements, see *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 688 (9th Cir. 1988), Rule 4(c)(1) speaks in mandatory language: "A summons must be served with a copy of the complaint." There is no ambiguity in that statement, and a summons is necessary for

service to be effective. Failure to properly serve a defendant strips a court of personal jurisdiction over that defendant. *See S.E.C. v. Ross*, 504 F.3d 1130, 1140-41 (9th Cir. 2007). Aries asserts that it was not served with a summons in violation of Rule 4(c)(1). It relies on the contents of the Notice of Service filed by Mach 1 on January 16, 2013. (Doc. 37.)

Because Aries Freight has challenged the efficacy of Mach 1's service, Mach 1 must demonstrate proper service. *See Butcher's Union Local 498 v. SDC Investment, Inc.*, 788 F.2d 535, 538 (9th Cir. 1986). In the Notice, Mach 1 states that Aries Freight "was personally served with the following papers: Amended Complaint[, and] Notice of Filing Amended Complaint." (*Id.* at 1.) Aries Freight stresses that nowhere does the Notice state that Aries Freight received a summons. While that is true, the attached affidavit of the process server clearly affirms that a summons was served with the complaint. The process server attested that "[t]he following came to my hand . . . SUMMONS IN A CIVIL ACTION with AMENDED COMPLAINT and NOTICE OF FILING AMENDED COMPLAINT and was executed . . . by delivering a true copy to the within named ARIES FREIGHT SYSTEMS, LP, by and through its Registered Agent, JEFFREY L. McINTYRE." (Doc. 37-1, Ex. 1.) Aries Freight contends that the Return of Service is ambiguous about whether a summons was actually delivered because it does not specify to what documents "a true copy" refers. Read as a whole, though, the "a true copy" language encompasses the three documents mentioned earlier in the affidavit—the Summons, Amended Complaint, and Notice of Filing Amended Complaint. The Return therefore describes service in accordance with Rule 4.

"A signed return of service constitutes prima facie evidence of valid service 'which can be overcome only by strong and convincing evidence.'" *S.E.C. v. Internet Solutions for Bus. Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) (quoting *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1294, 1298 (9th Cir. 1993)). As "strong and convincing evidence" to overcome Mach 1's signed return of service, Aries submitted the affidavit of its registered agent, Jeffrey McIntyre. McIntyre claims that "[o]n or about

- 5 -

January 9, 2013, I received by personal service a copy of the Amended Complaint . . . . No summons was attached to the documents I received." (Doc. 42-1, Ex. 1.) But a party's denial of service is not, by itself, "strong and convincing evidence." *Am. Honda Motor Co., Inc. v. AZGrafix*, No. CV-08-0656-PHX-FJM, 2008 WL 5329062 at *1 (D. Ariz. Dec. 22, 2008); *see also craigslist, Inc. v. Hubert*, 278 F.R.D. 510, 513-15 (N.D. Cal. 2011) ("[A] self-serving declaration is generally insufficient to defeat a signed returned of service."); *Trustees of Local Union No. 727 Pension Fund v. Perfect Parking, Inc.*, 126 F.R.D. 48, 52 (N.D. Ill. 1989) (same). Aries Freight has not produced any additional evidence and therefore has failed to come forward with strong and convincing evidence refuting the Return of Service. Aries Freight's Motion to Dismiss for lack of service is denied.

**III.   PERSONAL JURISDICTION OVER ARIES**

   **A.   Legal Standard**

The plaintiff bears the burden of establishing personal jurisdiction. *See, e.g., Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995). Once a defendant has moved to dismiss, "the plaintiff is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction" over the defendant. *Cummings v. W. Trial Lawyers Assoc.*, 133 F. Supp. 2d 1144, 1151 (D. Ariz. 2001) (internal quotations omitted). "[M]ere allegations of a complaint, when contradicted by affidavits, are not enough to confer personal jurisdiction over a non-resident defendant." *Chem Lab Prods., Inc. v. Stepanek*, 554 F.2d 371, 372 (9th Cir. 1977); *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977) ("[W]e may not assume the truth of allegations in a pleading which are contradicted by affidavit.") A court may look to affidavits submitted by the parties in its determination. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). However, "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiffs'] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

Because no statutory method for resolving a personal jurisdiction issue exists, the district court determines the method of its resolution. *See Data Disc, Inc. v. Sys. Tech. Assocs.,* 557 F.2d 1280, 1285 (9th Cir. 1977) (citing *Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939)). A district court may, but is not required to, allow discovery to help determine whether it has personal jurisdiction over a defendant. *See id.* at 1285 n.1. In addition, a district court may, but is not required to, hear evidence at a preliminary hearing to determine its jurisdiction. *See id.* at 1285 n.2. If the district court does not hear testimony or make findings of fact and permits the parties to submit only written materials, then the plaintiff need only make a prima facie showing of jurisdictional facts to defeat the defendant's motion to dismiss. *See Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 268 (9th Cir. 1995). Under this prima facie burden of proof, the plaintiff must establish facts, through admissible evidence, that if true would support personal jurisdiction over the defendant. *See Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). The Court has determined to proceed on the written materials submitted by the Parties. Accordingly, Aries Freight's request for an evidentiary hearing is denied.

**B.     Analysis**

**1.     The Test**

To establish that personal jurisdiction over Aries Freight is proper, Mach 1 must demonstrate that (1) Arizona's long arm statute confers jurisdiction over Aries Freight, and (2) that "the exercise of jurisdiction comports with the constitutional principles of Due Process." *See Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citation omitted); Fed. R. Civ. P. 4(k)(1)(A). Because Arizona's long-arm statute extends jurisdiction "to the maximum extent permitted by the . . . Constitution of the United States," the personal jurisdiction inquiry collapses into a Due Process analysis. *See* Ariz. R. Civ. P. 4.2(a); *Davis v. Metro Prod., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989); *Williams v. Lakeview Co.*, 199 Ariz. 1, 5, 13 P.3d 280, 282 (2000). Absent traditional bases for personal jurisdiction (e.g., physical presence, domicile, and consent) the Due Process Clause requires that nonresident defendants have certain "minimum contacts" with the

forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

"In determining whether a defendant had minimum contacts with the forum state such that the exercise of jurisdiction over the defendant would not offend the Due Process Clause, courts focus on 'the relationship among the defendant, the forum, and the litigation.'" *Brink v. First Credit Resources*, 57 F. Supp. 2d 848, 860 (D. Ariz. 1999) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). If a defendant's contacts with the forum state are sufficient to satisfy the Due Process Clause, then the Court must exercise either "general" or "specific" jurisdiction over the defendant. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-15 nn.8-9 (1984); *Ziegler*, 64 F.3d at 473. The nature of a defendant's contacts with the forum state will determine whether the Court exercises general or specific jurisdiction over him. *Helicopteros Nacionales*, 466 U.S. at 414-15 nn.8-9. Because no party contends that the Court has general jurisdiction over Aries Freight, only the exercise of specific jurisdiction will be considered.

*Schwarzenegger* governs determinations of whether sufficient minimum contacts exist to enable a given forum to exercise specific jurisdiction. Specific jurisdiction exists only if (1) the defendant *purposefully availed* himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or *purposefully directs* conduct at the forum that has *effects* in the forum; (2) the claim *arises out of* the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is *reasonable*. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801-02 (9th Cir. 2004). Since Mach 1 is the party that wants the Court to exercise jurisdiction over Aries Freight, it has the burden of establishing the first two elements; if it is successful, Aries Freight must come forward with a "compelling case that the exercise of jurisdiction would not be reasonable." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012)

(internal quotation marks and citations omitted).

### 2. Purposeful Direction

Specific jurisdiction over a tort defendant like Aries Freight exists where the intended effects of the defendant's non-forum conduct were purposefully directed at and caused harm in the forum state. *Calder v. Jones*, 465 U.S. 783, 788-90 (1984); *see Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1195 (9th Cir. 1988); *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 n.1 (9th Cir. 1995) (applying effects test to defamation, tortious interference with business relations, and intentional infliction of emotional distress claims). Thus with respect to tort claims, the effects test requires that the defendant have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

#### a. Intentional Act

No party contests this element. "We construe 'intent' in the context of the 'intentional act' test as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. Mach 1 has alleged that Aries intentionally reached out to Bustillos and Cardiel and invited them to come over and bring Mach 1 customers along. Therefore, the first *Calder* element is satisfied.

#### b. Express Aiming and Knowledge

"Purposeful direction" and "express aiming" are highly abstract phrases that "in the jurisdictional context hardly define[ ]" themselves. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). That is why "[t]he 'express aiming' analysis depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Schwarzenegger*, 374 F.3d at 807. Mach 1 alleges three claims against Aries Freight: (1) Tortious Interference with Existing and Prospective Contractual Relations (with Mach 1 customers), (2) Unfair Competition (using wrongfully obtained information), and (3) Misappropriation of Trade Secrets. (Doc. 31 ¶¶

92-109.) The crux of Mach 1's case against Aries Freight is that Aries Freight, knowing that Bustillos was a Mach 1 employee and had access to proprietary information, began contacting Bustillos with the intent that Bustillos breach his employment agreement with Mach 1 and bring that proprietary information to Aries Freight. That would enable Aries Freight to siphon off customers from Mach 1. That Aries Freight understood the potential ramifications of Bustillos's actions on Mach 1 is apparent from an email conversation between Bustillos and Ochoa, in which Bustillos states that "I would be taking a huge risk not only with my reputation but a personal business risk switching to . . . a competitor" and "[o]ne more thing, all attorney fees and handling will be your company's responsibility if M1 decides to come after me or you in breach of my contract." (Doc. 48-1, Ex. 1 at 4.) Bustillos also apparently faxed a copy of his employment agreement with Mach 1 to Aries Freight. (Doc. 48-2, Ex. 2.)

The emails support Mach 1's allegation that Ochoa and Bustillos were well aware that one of the primary goals of Bustillos's involvement was for Bustillos to bring a significant client base with him when he joined Aries. Ochoa requested, and Bustillos provided, financial projections that appear to be based off Mach 1's confidential client information in order to enable Aries Freight to chart its business plan in El Paso. (Doc. 48-3, Ex. 3; Doc. 48-4, Ex. 4.)

All of this, however, occurred in El Paso. No meetings or contacts took place between Aries Freight and Bustillos or Cardiel anywhere other than in El Paso. That is where Bustillos and Cardiel were stationed for Mach 1 and that is where Aries Freight was building its new facility. Therefore, all primary conduct that gave rise to Mach 1's claims occurred in El Paso.

Yet the personal jurisdiction inquiry does not end there. The location of the acts themselves is not dispositive. In *Calder* itself, the core actions forming the tort— publication of a libelous article—occurred entirely in Florida. 465 U.S. at 789-90. The Supreme Court nevertheless concluded that the intentional acts of writing and editing a libelous article were "expressly aimed" at California because the petitioners "knew [the

article] would have a potentially devastating impact upon respondent" who they knew lived and worked in California. *Id.* And so the Ninth Circuit has stated that "the respective directions of the intentional act and the known impact need not coincide for the 'express aiming' requirement to be satisfied.'" *Washington Shoe*, 704 F.3d at 675.

Mach 1 is an Arizona corporation headquartered in Tempe. (Doc. 31 ¶ 1.)[2] It alleges that Aries Freight knew that Mach 1 was an Arizona corporation because its Executive Vice President (Ochoa) was a former Mach 1 employee. (*Id.* ¶ 47.) In this regard, this case bears a striking resemblance to *Harris Rutsky & Co. Insurance Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003). The Ninth Circuit concluded that personal jurisdiction existed over a nonresident defendant in California where three facts were present. First, the plaintiff company alleged that the defendant company committed an intentional tort when it interfered with the plaintiff's contractual and economic relationships. *Id.* at 1131. Second, the defendant company knew that the plaintiff company was a resident of California. *Id.* Third, the plaintiff company "[wa]s a California corporation whose principal place of business is in California, and the brunt of the harm was therefore felt in California. . . . In sum, under our precedents the facts alleged here are more than sufficient to satisfy the 'effects' test." *Id.*

Those three elements are likewise apparent here. Mach 1 has alleged that Aries Freight engaged in similar intentional torts, that Aries Freight knew Mach 1 was an Arizona corporation (as can anyone who looks at their website), and Mach 1 ultimately felt the harm from Aries Freight's alleged conduct at its principal place of business. Aries objects to the applicability of *Harris Rutsky*. First, it contends that even if Mach 1's principal place of business is Arizona, the "brunt of the harm" was felt in the El Paso

---

[2] In a footnote, Aries Freight raises an argument that the listed plaintiff in this case—Mach 1 Air Services, Inc.—is not a registered corporation in Arizona. (Doc. 42 at 3 n.2.) The Arizona Corporation Commission lists a "Mach 1 Global Services, Inc." and a "Mach 1 Air Services (Mexico), Inc", but not Mach 1 Air Services, Inc. (Doc. 54-1, Ex. 1.) Nevertheless, Aries Freight "has assumed that Plaintiff and 'Mach 1 Global Services, Inc.' are one and the same" for purposes of its Motion, while reserving any applicable defenses. (Doc. 42 at 3 n.2.) The Court likewise makes that assumption, and therefore will not consider Aries Freight's elaboration on that argument in its Reply.

facility, where customers were allegedly jumping ship for Aries. It cites *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482 (9th Cir. 1993) for support. There, the Ninth Circuit stated that "determining where the brunt of the harm is felt requires a difficult case-specific analysis. . . . [T]he brunt of the harm was perhaps felt most strongly where the [tortious activities] affected business most significantly." *Id.* at 1487. But *Core-Vent* was modified in *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006). The case-by-case evaluation of the where the brunt of the harm was discarded—instead, "[i]f a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." *Id.* at 1207. Aries Freight allegedly reached out to harm Mach 1. Mach 1 resides in Arizona. Thus, in the end, the effects of Aries Freight's allegedly tortious conduct resonated to a sufficient degree in Arizona.

Aries Freight also claims that residence plus foreseeable effect does not equal jurisdiction, citing *Kruska v. Perverted Justice Foundation Inc.*, CV 08-0054-PHX-SMM, 2008 WL 5235373 (D. Ariz. Dec. 16, 2008). But that case concerned passive conduct—the maintenance of a website. *Id.* at *6. The law is clear that where a defendant directs an intentional tort against an entity, it has expressly aimed its conduct at the entity's residence. Here, Aries Freight allegedly committed a tort against Mach 1, knowing that Mach 1 resided in Arizona. It has therefore expressly aimed conduct into Arizona.

### 3. Arising Out Of

Mach 1's case "arises out of" Aries Freight's contacts with Arizona. It is Aries Freight's alleged interference with Mach 1 employees, customers, and contracts that give rise to Mach 1's claims. The fact that the actual activities occurred in El Paso does not detract from the conclusion that those same activities gave rise to the contacts with Arizona out of which this suit arises. Therefore, the purposeful direction element has been established.

**D.     Reasonableness**

The Court finds that Mach 1 has carried its burden to establish the first two prongs of the *Schwarzenegger* test. The burden now shifts to Aries Freight to present a "compelling case that the exercise of jurisdiction would not be reasonable." *Washington Shoe*, 704 F.3d at 672. Seven factors serve as touchstones of this inquiry:

> (1) [T]he extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

By allegedly reaching into Mach 1 (an Arizona resident) and using one of Mach 1's employees to feed it data and customers, Aries Freight purposefully interjected itself into Arizona. It knew Mach 1 was an Arizona company. While the majority of Aries Freight's alleged activity occurred within the El Paso region, the impact of those actions extended into Arizona. Therefore, the first reasonableness factor weighs in favor of jurisdiction.

As a Texas company, Aires surely faces a burden by litigating in Arizona. There will be substantial travel expenses involved throughout the litigation. Nevertheless, the distance between Phoenix and Houston is not so great in light of "the advent of modern transportation." *Ballard v. Savage*, 65 F.3d 1495, 1501 (9th Cir. 1995) (internal quotation marks omitted). Moreover, the Ninth Circuit does not allow this factor to defeat jurisdiction unless the "inconvenience is so great as to constitute a deprivation of due process. . . ." *Roth v. Garcia Marquez,* 942 F.2d 617, 623 (9th Cir. 1991). Aries has not presented evidence of severe inconvenience. Therefore this factor does not counsel against exercise of jurisdiction.

There is inevitably a sovereignty conflict here, and both states would have an interest in resolving this case Arizona has an interest in adjudicating disputes where one

of its residents is harmed by the tortious conduct of another, while Texas law may likely govern Aries conduct. *See* Restatement (Second) Conflicts of Laws § 145 cmt. f. Moreover, Texas has a significant interest in resolving a situation where a Texas company has allegedly interfered with contracts of Texas citizens and employees. Consequently, these factors essentially cancel out.

Efficiency likely favors jurisdiction elsewhere. Almost all of the events that Mach 1 describes in its Amended Complaint occurred within a 150 mile radius of El Paso, Texas. All of the major players are currently in the El Paso area—Bustillos, Cardiel, the Mach 1 facility and employees, the Aries facility and employees, and the customers at issue. There may be some Mach 1 witnesses here in Arizona, where contracts may have been drafted, but they are heavily outnumbered by the Texas witnesses. Therefore efficiency counsels against jurisdiction. In addition, a clear alternative forum would be available—the Western District of Texas, El Paso division. Thus considerations of judicial economy and efficiency for the Parties points toward Texas, not Arizona.

Of course, Mach 1 has an interest in having this case heard in Arizona—this is its home forum and location of its headquarters.

Aries Freight was required to make out a "compelling" case for refusing jurisdiction. After considering the factors outlining the reasonableness inquiry, the Court cannot determine that Aries has shown a compelling case that jurisdiction would be unreasonable. Therefore, it has personal jurisdiction over Aries Freight

**IV. VENUE**

Aries has also moved to dismiss or transfer because it contends venue is improper. Mach 1 claims venue under 28 U.S.C. § 1391(b)(2), which provides for venue in a diversity action in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."

### A. Legal Standard

"Plaintiff has the burden of proving that venue is proper in the district in which the suit was initiated." *Hope v. Otis Elevator Co.*, 389 F. Supp. 2d 1235, 1243 (E.D. Cal. 2005) (citing *Airola v. King*, 505 F. Supp. 30, 31 (D. Ariz. 1980)); *see also Piedmont Label Co. v. Sun Garden Packing Co.,* 598 F.2d 491, 496 (9th Cir. 1979). When deciding a challenge to venue, the pleadings need not be accepted as true, and the district court may consider facts outside of the pleadings. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). The trial court must "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138-39 (9th Cir. 2004).

### B. Substantial Part of the Events

Mach 1 relies on the same line of argument to support venue in the District of Arizona as it did for jurisdiction. That is not enough. Merely being the situs of plaintiff's injury is insufficient—otherwise venue would always be proper in a plaintiff's district because the impact of the injury will almost always be there. *Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1287 n.4 (D. Ariz. 2009); *MB Fin. Bank, N.A. v. Walker*, 741 F. Supp. 2d 912, 918 (N.D. Ill. 2010). The fact that Aries Freight allegedly knew it was interfering with Mach 1's customers, employees, and contracts, and that Mach 1 was an Arizona corporation and would be harmed by Aries Freight's actions was enough to support exercising personal jurisdiction over Aries Freight, but something more than that is needed to establish that venue is proper.

The statute requires examination of where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Mach 1's Amended Complaint does not describe any activity in Arizona. The only reference to Arizona is where Mach 1 alleges that it is an Arizona resident. In contrast, the Amended Complaint refers numerous times to "the El Paso area" and concentrates on the Defendants' activities in that area. That is where Bustillos was allegedly communicating with Ochoa while still

- 15 -

1 employed by Mach 1. That is where Bustillos was allegedly emailing himself proprietary
2 information to share with Aries. That is where Bustillos allegedly began working for
3 Aries and soliciting Mach 1 customers. And that is where Bustillos allegedly convinced
4 Caridel to come to Aries and where Cardiel allegedly sent herself Mach 1 confidential
5 information. The list goes on, and everything on it occurred in El Paso. Indeed, the TRO
6 and injunctive relief Mach 1 requests limits themselves to a specific geographic area—a
7 150-mile radius of El Paso. (Docs. 21, 31.) El Paso is where everything happened.

8 Furthermore, the statute directs the Court to consider "events or omissions" and
9 not impact. It is true that "the locus of the injury [i]s a relevant factor" in deciding proper
10 venue. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001); *see also Fiore
11 v. Walden*, 688 F.3d 558, 587-88 (9th Cir. 2011). But only as one factor or one event.
12 Again, if the locus of the injury was the sole and decisive factor, then the personal
13 jurisdiction and venue inquiries would meld into one minimum contacts test. *Jenkins
14 Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003). *But see Astro-Med, Inc. v.
15 Nihon Kohden Am., Inc.*, 591 F.3d 1, 12 (1st Cir. 2009) (focusing on where the harm was
16 felt rather than where the actions occurred). Plaintiff's home forum would always win,
17 and that is not the law. The law specifies a different line of inquiry for personal
18 jurisdiction (minimum contacts) and venue (whether "a *substantial* part of the events or
19 omissions" occurred in the forum state). Based on the allegations of the Amended
20 Complaint and the attached evidence, the Court cannot conclude that a substantial part of
21 the events or omissions occurred in Arizona.

22 *Jenkins Brick* is on point. The facts in that breach of employment contract case
23 largely mirror those presented here:

24 What acts or omissions by Bremer "gave rise" to Jenkins Brick's claim? Of
those acts, did a "substantial part" of them take place in Alabama? The
25 events that gave rise to Jenkins Brick's claim occurred exclusively in
26 Georgia. The contract was not negotiated; rather, it was presented to
Bremer in Georgia. It was executed in Georgia because that is where
27 Bremer signed the contract. The non-compete agreement was also intended
28 to be performed primarily in Savannah in order to protect the Savannah

> business and goodwill that Jenkins Brick acquired with the help of Bremer. After all, Bremer's sales territory comprised only Savannah and the surrounding area; there was no goodwill garnered by Bremer in other territories that needed to be "protected" by virtue of the non-compete provision. Perhaps this is why Jenkins Brick seeks to enforce the agreement only in the Savannah territory. Finally, and most importantly, the contract was breached when Bremer failed to perform his post-employment obligation to refrain from competing against Jenkins Brick-conduct that occurred only in Georgia. In sum, none of the acts giving rise to Jenkins Brick's claim occurred in Alabama, much less a "substantial part" of them.

*Id.* at 1372. The Eleventh Circuit's analysis is persuasive and the Court applies it the facts here.

### C. Dismissal or Transfer

If venue is improper, 28 U.S.C. § 1406(a) directs the Court to "dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought." Additionally, under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district or division where it might have been brought "[f]or the convenience of parties and witnesses" and "in the interests of justice." There are therefore three options available to deal with this case: (1) dismiss the case against Aries Freight for improper venue, (2) transfer the case against Aries Freight, or (3) transfer the entire case. The Court finds that the interests of justice warrant transfer of the entire case to the Western District of Texas, El Paso Division. That court would have jurisdiction over all the Parties. Moreover, considerations of efficiency for the parties and economy for the court system counsel trying all of Mach 1's claims in a single forum. Transfer is also appropriate because Mach 1 has alleged serious claims against the Defendants. Mach 1 would likely be severely prejudiced by dismissal of the case. The case will therefore be transferred.

### CONCLUSION

Neither subject matter nor personal jurisdiction is lacking in this case. Nevertheless, venue is improper as to Aries Freight in the District of Arizona. In the interests of justice, the entire case, along with any pending motions, will go to El Paso.

As per the Parties' stipulation at the hearing held on March 22, 2013, the TRO entered against Bustillos and Cardiel shall continue for six weeks from the date of this order.

**IT IS THEREFORE ORDERED** that Aries Freight's Motion to Dismiss or Transfer Venue (Doc. 42) is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to transfer this action to the Western District of Texas, El Paso Division. The TRO shall remain in force for an additional six weeks from the date of this order.

Dated this 25th day of March, 2013.

/G. Murray Snow
United States District Judge